UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. |
| v. | ) | |
| | ) | |
| AARON ELLIS; | ) | |
| | ) | |
| GLENDA MONTGOMERY; | ) | |
| | ) | |
| AND KEVIN MONTGOMERY, individually and | ) | |
| d/b/a MONTGOMERY RANCH; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, United States of America, on behalf of the United States Department of Agriculture, Farm Service Agency, (the "FSA"), by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Joshua M. Jones, Assistant United States Attorney for this District, upon information and belief and for its cause of action alleges:

### JURISDICTION AND VENUE

1. This is a civil action brought by the United States under the provisions of 28 U.S.C. § 1345. This is an action brought under theories of conversion, waste, breach of contract, and fraudulent transfer pursuant to 28 U.S.C. § 3301 *et seq*. involving the Defendants and property located in the Eastern District of Missouri.

2. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the Defendants are located in Carter County, Missouri in the Eastern

District of Missouri and a substantial part of the events giving rise to the claim occurred in the Eastern District of Missouri.

3.     Divisional venue is proper in the Southeastern Division pursuant to L.R. 3-2.07(A)(1)

**PARTIES**

4.     Plaintiff is the United States of America.

5.     Defendant Aaron Ellis is a resident of Carter County, Missouri.

6.     Defendant Glenda Montgomery is a resident of Carter County, Missouri.

7.     Defendant Kevin Montgomery, d/b/a Montgomery Ranch, is a resident of Carter County, Missouri.

**FACTS COMMON TO ALL COUNTS**

8.     On June 24, 2015, Defendant Aaron Ellis executed a Promissory Note in the amount of one hundred thousand dollars ($100,000) at 2.375% interest to be repaid over the course of seven (7) years ("Loan 44-03"). A copy of the Promissory Note is attached as Exhibit A.

9.     On the same day, Defendant Aaron Ellis executed the first of several Security Agreements, whereby he granted the FSA a security interest in various items, including goods, timber to be cut, payment intangibles, and general intangibles. A copy of the first Security Agreement is attached as Exhibit B.

10.     The debt was secured by a UCC Financing Statement filed June 29, 2015, Document No. 1506295632986, securing "All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment property, crop insurance, indemnity

2

payments, and all entitlements, benefits, and payments from all state and federal farm programs." A copy of the UCC Financing Statement is attached as Exhibit C.

11.     The UCC Financing Statement was continued January 7, 2020, Document No. 2001074036966. *See* Exhibit C.

12.     On October 27, 2015, Defendant Aaron Ellis executed a Promissory Note in the original amount of one hundred eighty-four thousand dollars ($184,000.00) at 2.50% interest to be repaid over the course of seven (7) years ("Loan 44-06"). A copy of the Promissory Note for Loan 44-06 is attached as Exhibit D.

13.     Defendant Aaron Ellis and Tori Brazil Ellis concurrently signed a Deed of Trust, which was filed with the Carter County, Missouri Records on October 27, 2015 in Book 334 at Page 39. A copy of the Deed of Trust is attached as Exhibit E.

14.     The Deed of Trust secured loans including Loans 44-03 and 44-06 and encumbered real property with a legal description of:

> THE SOUTH HALF OF THE NORTHWEST QUARTER AND THE NORTHWEST QUARTER OF THE SOUTHWEST QUARTER AND THE 1 WEST TWO-THIRDS OF THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER ALL IN SECTION 29, TOWNSHIP 27 NORTH, RANGE 1 WEST, CONTAINING 147 ACRES, MORE OR LESS. LESS AND EXCEPT THAT PART DESCRIBED AS FOLLOWS: STARTING AT THE SOUTHWEST CORNER OF SECTION 29, TOWNSHIP 27 NORTH RANGE 1 WEST, THENCE NORTH APPROXIMATELY 1725 FEET TO THE POINT OF BEGINNING, THENCE EAST 700 FEET TO A POINT, THENCE NORTHWESTERLY APPROXIMATELY 600 FEET TO A POINT, THENCE WEST 600 FEET TO THE WEST SECTION LINE OF SECTION 29, THENCE SOUTH APPROXIMATELY 550 FEET ALONG AND WITH THE WEST LINE OF SECTION 29 TO THE POINT OF BEGINNING, CONTAINING 8 ACRES, MORE OR LESS. ALL IN SECTION 29, TOWNSHIP 27 NORTH, RANGE 1 WEST.
> (TRACT A)
> ALL OF THE SOUTHEAST QUARTER OF THE NORTHWEST QUARTER; THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER LYING NORTH OF A LINE COMMENCING AT POING THIRTEEN CHAINS SOUTH OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER AND RUNNING SOUTH 65.5 DEGREES WEST; AND ALL THAT PART OF THE WEST TWO-THIRDS OF THE NORTHEAST QUARTER OF THE

NORTHWEST QUARTER, WHICH LIES ON THE SOUTH SIDE OF THE CURRENT RIVER BRANCH OF FRISCO RAILROAD, ALL IN SECTION THIRTY-TWO, TOWNSHIP TWENTY-SEVEN, RANGE 1 WEST, AND CONTAINING 163 1/3 ACRES MORE OR LESS.

LESS AND EXCEPT 6.71 ACRES OWNED BY WILLIAM O PRICE AND DESCRIBED AS FOLLOWS: ALL THAT PART OF THE SE 1/4 OF THE NW 1/4 OF SECTION 32, TOWNSHIP 27 NORTH, RANGE 1 WEST DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN MARKING THE CENTER QUARTER CORNER OF SAID SECTION, THENCE NORTH 02DEG14'20" EAST ALONG AND WITH THE EAST LINE OF THE NW 1/4 OF SAID SECTION A DISTANCE OF 100.74 FEET TO AN IRON PIN ON THE SOUTH RIGHT OF WAY OF A FORTY FOOT WIDE COUNTY ROAD, THENCE NORTHWESTERLY ALONG AND WITH SAID RIGHT OF WAY THE FOLLOWING CHORD BEARINGS AND DISTANCES; NORTH 53DEG. 46'00" WEST A DISTANCE OF 71.80 FEET TO A POINT; THENCE NORTH 36DEG27'00" WEST A DISTANCE OF 174.78 FEET TO A POINT, THENCE ON A STRAIGHT LINE BEARING NORTH 03DEG.24'00" EAST A DISTANCE OF 120 FEET TO AN IRON PIN, THENCE DEPARTING FROM SAID RIGHT OF WAY LINE SOUTH 80DE43"08" WEST A DISTANCE OF 164.89 FEET TO MONUMENT MARKING THE SOUTHWEST CORNER OF SAID SE 1/4 OF THE NW 1/4, THENCE NORTH 87 DEG01'00" EAST ALONG AND WITH THE SOUTH LINE OF SAID NW 1/4 A DISTANCE OF 1331.69 FEET TO THE POINT OF BEGINNING.

ALSO, LESS AND EXCEPT ALL THAT PART OF THE SOUTHWEST QUARTER OF THE NORTHEAST QUARTER AND THAT PART OF THE NORTHWEST QUARTER FO THE SOUTHEAST QUARTER OF SECTION 32, TOWNSHIP 27 NORTH, RANGE 1 WEST THAT LIES, WEST OF COUNTY ROAD, CONTAINING 17.5 ACRES, MORE OR LESS.

ALSO CONVEYING, THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER AND THE WEST TWO-THIRDS OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 29, AND ALL OF THAT PART OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 29, AND ALL OF THAT PART OF THE NORTHEAST QUARTER OF THE NORTHWEST QUARTER OF SECTION 32, ALL IN TOWNSHIP 27 NORTH, RANGE 1 WEST, THAT LIES NORTH AND WEST OF FRISCO RAILROAD RIGHT OF WAY, THE PRESENT EAST AND WEST FENCE AS NOW BUILT TO BE THE DIVIDING LINE BETWEEN THE GRANTORS AND GRANTEES HERE, CONTAINING 79 2/3 ACRES, MORE OF LESS.

(TRACT B)

ALSO CONVEYING ALL OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 32, TOWNSHIP 27 NORTH, RANGE 1 WEST, LESS AND EXCEPT THAT PART DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SAID NORTHWEST QUARTER OF THE NORTHWEST QUARTER AND RUN SOUTH ALONG EAST LINE OF SAID FORTY APPROXIMATELY 470 FEET TO THE POINT OF BEGINNING; THENCE RUN WEST 275 FEET; THENCE SOUTH 850 FEET; THENCE RUN EAST 275 FEET TO THE EAST LINE OF SAID FORTY; THENCE NORTH ALONG SAID EAST LINE OF THE NORTHWEST QUARTER OF THE

NORTHWEST QUARTER TO THE POINT OF BEGINNING, CONTAINING 5.36 ACRES, MORE OR LESS, CONVEYING 34.64 ACRES, MORE OR LESS, EXCEPTING THERE FROM RIGHT OF WAY OF THE COUNTY ROAD. (TRACT C)

(the "Real Property").

15.     Per the terms of the Deed of Trust, Plaintiff's security interest included

all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

16.     By late 2018, Defendant Aaron Ellis had defaulted on his loans. Defendant Aaron Ellis failed to pay to the FSA installments of principal and interest when due in violation of the provisions of the Note and Deed of Trust. On December 11, 2018, the FSA issued to Defendant Aaron Ellis and Tori Ellis a notice of Intent to Accelerate for failure to maintain loan payments. A copy of that letter is attached as Exhibit F.

17.     On November 22, 2019, the FSA issued its Notice of Acceleration of Farm Loan Programs Accounts Secured by Real Estate and/or Chattels in Cases Not Involving Bankruptcy. *See* Exhibit F.

18.     The FSA had a security interest in timber growing on the Real Property.

19.     Defendant Aaron Ellis covenanted and agreed to get prior written consent from the FSA before removing and selling timber off the Real Property.

20.     Shortly after purchasing the Real Property, all Defendants began harvesting and selling timber off the Real Property without notifying FSA.

5

21.     In 2016, Defendant Aaron Ellis, through Defendant Kevin Montgomery, sold timber to Ronald Emmons for approximately $43,610.94.

22.     The funds were deposited in an account belonging to "Montgomery Ranch"; all three Defendants were authorized users of the account.

23.     Defendant Aaron Ellis failed to turn the timber or its sales proceeds over to the FSA.

24.     Defendant Aaron Ellis failed to report the sale of timber off the Real Property to the FSA.

25.     On September 15, 2020, FSA representatives visited the site and discovered areas where timber had been harvested.

26.     Also during the September 15, 2020, site visit, the FSA discovered stacked logs, a sawmill pile, scraps, lumber, and logging roads.

27.     The FSA obtained aerial photographs of the property from the fall of 2016 showing the harvesting of timber.

28.     In November 2021, Defendant Aaron Ellis and Tori Brazil Ellis sold a tract of the Real Property to Alex Johnson for four hundred fourteen thousand, six hundred dollars ($414,600) and a tract of the Real Property to Michael Sanders for two hundred seventy-two thousand, six hundred sixty-two dollars and seventy-four cents ($272,662.74). The sales of the two tracts represented a sale of all of the security Real Property.

29.     Due to the FSA's lien on the Real Property, one hundred nine thousand, two hundred ninety-nine dollars and eight cents ($109,299.08) in proceeds from the Johnson sale and two hundred seventy two thousand, two hundred ninety-three dollars and ninety-nine cents

($272,293.99) in proceeds from the Sanders sale were remitted to the FSA, at which time the FSA applied the funds to Defendant Aaron Ellis' outstanding debts.

30.     Upon the sale of the tracts of Real Property described above, no more chattel or real estate security remain.

31.     As of December 8, 2021, the total remaining outstanding debt to the FSA is as follows:

| Loan Number | Date of Loan | Unpaid Principal Balance | Total Interest | Daily Interest Accrual | Total |
|---|---|---|---|---|---|
| 4420-03 | June 24, 2015 | $24,418.94 | $1,722.37 | $1.5889 | $26,141.31 |
| 4420-06 | October 27, 2015 | $38,938.42 | $77.35 | $2.6670 | $39,015.77 |
| **Total** | | **$63,357.36** | **$1,799.74** | **$4.2559** | **$65,157.08** |

32.     The total sale price for the Real Property would have been greater had the Real Property not been harvested for timber.

## COUNT I - CONVERSION
### (Against All Defendants)

33.     Plaintiff incorporates paragraphs 1 through 32 as is fully stated herein.

34.     The FSA was entitled to the proceeds of any timber harvested off the Real Estate.

35.     Defendants converted the FSA's property by exercising an act of dominion wrongfully exerted over the FSA's property, in denial of or inconsistent with the FSA's rights to the property.

36.     The Defendants' conversion of the FSA's interest in the timber to their own use, along with Defendant Aaron Ellis's failure to turn over to the FSA the sales proceeds of the timber, was the proximate, natural and foreseeable cause of damages to the FSA.

37.     Defendants Aaron Ellis, Kevin Montgomery d/b/a Montgomery Ranch, and Glenda Montgomery, are jointly and severally liable for the reduction in value to the Real Property caused by the conversion of its timber.

WHEREFORE, the United States prays this Court enter judgment in its favor, against all Defendants, jointly and severally, in the greater amount of $43,610.94 or an amount up to the entire amount due FSA based on the full extent of the Defendants' waste or conversion, plus interest accruing pursuant to Mo. Rev. Stat. § 408.020, to the date of judgment.

### COUNT II-WASTE
**(Against All Defendants)**

38.     Plaintiff incorporates paragraphs 1 through 32 as is fully stated herein.

39.     The harvesting of timber off the Real Property subject to the FSA's lien materially impaired the value of the security.

40.     The harvesting of the timber was done without the FSA's consent.

41.     Defendants Aaron Ellis, Kevin Montgomery d/b/a Montgomery Ranch, and Glenda Montgomery, are jointly and severally liable to the FSA for the value of the timber removed.

WHEREFORE, the United States prays this Court enter judgment in its favor, against all Defendants, jointly and severally, for the diminution in value of real estate caused by the waste, plus interest on the judgment at the legal rate thereafter, plus the costs of this action.

### COUNT III-BREACH OF CONTRACT (MONETARY DEFAULT)
**(Against Defendant Aaron Ellis)**

42.     Plaintiff incorporates paragraphs 1 through 32 as is stated fully herein.

43.     Defendant Aaron Ellis failed to make payments on the Notes when due and the entire balances of the Notes are due.

44.     As a result of Defendant Aaron Ellis's failure to pay FSA according to the terms of the Notes, the FSA has been damaged.

WHEREFORE, the United States prays this Court enter judgment in its favor, against Defendant Aaron Ellis, in the amount of $63,357.36 principal and $1,799.74 interest as of December 8, 2021, plus interest accruing after that date at a rate of $4.2559 per day to the date of judgment.

## COUNT IV-BREACH OF CONTRACT (NON-MONETARY DEFAULT)
### (Against Defendant Aaron Ellis)

45.     Plaintiff incorporates paragraphs 1 through 32 as is stated fully herein.

46.     Defendant Aaron Ellis agreed to "not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of [Plaintiff]."

47.     Ellis sold timber off the Real Property without FSA's knowledge or consent.

48.     Failure to perform under the terms of the agreement between the parties constitutes a non-monetary default on Ellis's loan obligations.

49.     As a result of Ellis's non-monetary default, Plaintiff has been damaged.

WHEREFORE, the United States prays this Court enter judgment in its favor, against Defendant Aaron Ellis, in the amount of $63,357.36 principal and $1,799.74 interest as of December 8, 2021, plus interest accruing after that date at a rate of $4.2559 per day to the date of judgment.

### COUNT V – FRAUDULENT TRANSFER IN VIOLATION OF 28 U.S.C. § 3304(A)(1)
### (Against All Defendants)

50.    Plaintiff incorporates paragraphs 1 through 32 as is stated fully herein.

51    Defendant Aaron Ellis is a "debtor" under 28 U.S.C. § 3002(4).

52.    The sales of the timber are examples of "transfer" as defined by 28 U.S.C. § 3301(6).

53.    The FSA is a "creditor" of Defendant Aaron Ellis as defined by 28 U.S.C. § 3301(4).

54.    The obligation Aaron Ellis owed to the FSA as a result of its notes and security instruments arose before the transfers occurred and Ellis made transfers to Kevin Montgomery d/b/a Montgomery Ranch, and Glenda Montgomery without receiving reasonably equivalent value in exchange for the transfers.

55.    Ellis was insolvent at the time or became insolvent as a result of the transfers.

56.    The transfers Ellis made to and through Kevin Montgomery d/b/a Montgomery Ranch, and/or Glenda Montgomery are voidable pursuant to 28 U.S.C. § 3306(a).

WHEREFORE, the United States prays this Court enter judgment in its favor, against all Defendants, jointly and severally, in the greater amount of $43,610.94 or an amount up to the entire amount due FSA based on the full extent of the Defendants' fraudulent transfers, plus interest accruing to the date of judgment.

### COUNT VI- FRAUDULENT TRANSFER IN VIOLATION OF 28 U.S.C. § 3304(b)(1)(A)
### (Against All Defendants)

57.    Plaintiff incorporates paragraphs 1 through 32, and 51, 52, and 53 as is stated fully herein.

58.     The Defendants sold the timber to Ronald Emmons with actual intent to hinder, delay, or defraud the United States, in violation of 28 U.S.C. § 3304(b)(1)(A).

59.     The transfers Ellis made to and through Kevin Montgomery d/b/a Montgomery Ranch, and/or Glenda Montgomery are voidable pursuant to 28 U.S.C. § 3306(a).

WHEREFORE, the United States prays this Court enter judgment in its favor, against all Defendants, jointly and severally, in the greater amount of $43,610.94 or an amount up to the entire amount due FSA based on the full extent of the Defendants' fraudulent transfers, plus interest accruing to the date of judgment.

## COUNT VII – FRAUDULENT TRANSFER IN VIOLATION OF 28 U.S.C. § 3304(B)(1)(B)
### (Against All Defendants)

60.     Plaintiff incorporates paragraphs 1 through 32, and 51, 52, and 53 as is stated fully herein.

61.     Ellis made the transfers to and through Kevin Montgomery d/b/a Montgomery Ranch, and/or Glenda Montgomery without receiving a reasonably equivalent value in exchange.

62.     Ellis was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or intended to incur; or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

63.     The transfers Ellis made to and through Kevin Montgomery d/b/a Montgomery Ranch, and/or Glenda Montgomery are voidable pursuant to 28 U.S.C. § 3306(a).

WHEREFORE, the United States prays this Court enter judgment in its favor, against all Defendants, jointly and severally, in the greater amount of $43,610.94 or an amount up to the entire

amount due FSA based on the full extent of the Defendants' fraudulent transfers, plus interest accruing to the date of judgment.

### DEMAND FOR RELIEF
### (All Counts)

WHEREFORE, the United States incorporates its prayers for relief for each and every count above and further prays this Court enter judgment in its favor against all Defendants for interest on the judgment at the legal rate thereafter, the costs of this action, and such other relief as is just and equitable.

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

/s Joshua M. Jones
Joshua M. Jones, Mo. Bar #61988
Assistant United States Attorney
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, 20th Floor
St. Louis, MO 63102
(314) 539-2310
Fax: (314) 539-2287
joshua.m.jones@usdoj.gov